

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion Number O-5287
Re: Transfer of entire enrollment
of school district under cur-
rent rural aid bill (Acts 1941,
47th Leg., R.S., H.B. 234, Ch.
549, p. 880).

We have before us your letter of May 6, 1943, from
which we quote as follows:

"Superintendent Breedlove of the Haskell School
informs me that he has several districts annexed to
his district for the current year by contract as
authorized by section 2, article 8 of the current
Equalization Aid Law.

"Superintendent Breedlove holds that this section
will entitle him to the maximum of $5 per month for
the 9 months of the term as instructional cost on
elementary pupils, and the maximum of $7.50 per month
for the 9 months of the term for high school pupils
living in these contracted districts and attending
the Haskell School.

"I should like to have your opinion as to whether
this is the correct legal interprepation of section
2, article 8. You will bear in mind that Haskell,
which is the receiving district, is not a state-aid
school, and that the contracted districts are eligi-
ble for aid."

Honorable L. A. Woods, page #2


Section 2, Article VIII of the rural aid bill author-
izes, under certain conditions, the transfer of the entire
scholastic enrollment of a school district unable to maintain
a satisfactory school to an accredited school of higher rank.
Where the transfer is made to a school district not a state-aid
school, the following provision is applicable:

> "* * * If the receiving school is not a State
> Aid school, the scholastic census rolls both white
> and colored shall be combined, the per capita ap-
> portionment shall be paid direct to the receiving
> school, all local taxes of the sending contracting
> district except those going to the interest and
> sinking fund shall be credited to the receiving
> school by the Tax Collector as collected, and the
> sending contracting district will be eligible for
> as much Salary Aid as is necessary to supplement
> the State Available and Local Maintenance Funds,
> on the scholastics from the sending district at-
> tending a school in the receiving district, to
> cover the approved cost of instruction per scho-
> lastic in the receiving school, provided that
> such approved cost shall not exceed Seven Dol-
> lars and Fifty Cents ($7.50) per month for high
> school students or Five Dollars ($5.00) per month
> for elementary students."  (Emphasis added).

Under any interpretation the largest amount to which
a school district, conducting a nine month school, could be
entitled under the Act would be $7.50 for each high school
student and $5.00 for each elementary student for each of nine
months, or a total of $67.50 and $45.00, respectively.  But
does this mean that each school district coming within the
terms of the above quoted provision is entitled to such an
amount if the same is not needed or necessary?  We think that
the language used clearly shows that the answer is a negative
one.  It is provided that the sending district is entitled to
as much aid "as is necessary to supplement" local maintenance
and State available funds "to cover the approved cost of in-
struction per scholastic in the receiving school."  "As much

Honorable L. A. Woods, page #3

as is necessary" does not mean "more than is necessary."
And the provision that such approved cost "shall not exceed"
$7.50 per month for high school students or $5.00 per month
for elementary students does not make a grant of such amounts
but merely sets the same as maximum limitations.

We have been informed by members of your Equalisation
Division that the cost of instruction is determined by item-
ized budgets submitted by the school districts, and the cost
of instruction is ascertained and approved on that basis. Up-
on inquiry we were further informed that the Equalization Di-
vision has determined that for five months the Haskell school
district will need no supplementary funds to cover the approved
cost of instruction. Therefore, need is shown for only four
months. It follows that the sending district will be eligible
for supplementary aid for only four months. To allow more than
such an amount would, under the submitted budget, create a sur-
plus.

The purpose of the rural aid grant is to make it possi-
ble for schools, lacking sufficient funds, to operate properly
and successfully - not to create a surplus in the funds of a
district. We quote the following provision from Article VI of
the bill:

" * * * and no aid shall be given unless it
can be shown that all provisions of this Act have
been complied with and that such amount of aid
actually needed as shown by the approved budget
and actual expenditures and that the funds are
being used as approved."

You are, therefore, advised that where the entire scho-
lastic enrollment of a school district entitled to rural aid
is transferred, under the provisions of Section 2, Article VIII
of the current bill, to a school district which is not a State
aid school, the sending district will be eligible for as much
Salary Aid as is necessary to supplement the State available

Honorable L. A. Woods, page #4

and local maintenance funds, on the scholastics from the sending school attending school in the receiving district, to cover the approved cost of instruction per scholastic in the receiving school, provided that such approved cost shall not exceed $7.50 per month for high school students or $5.00 per month for elementary students. You are further advised that such amounts are the maximum amounts authorized and are to be granted only if a need is shown therefor. In other words, aid may be granted only in the amounts needed, but in no event may the same exceed the maximum amount set by the Act.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By George W. Sparks
Assistant

GWS-s

APPROVED MAY 18, 1943

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

